


FILED

Jul 27 2026, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Susan S. McDermott,

*Appellant-Plaintiff*

v.

Sue Finkam and City of Carmel, Indiana,

*Appellees-Defendants*

July 27, 2026

Court of Appeals Case No.
25A-PL-3144

Appeal from the Hamilton Superior Court

The Honorable Jonathan M. Brown, Judge

Trial Court Cause No.
29D02-2504-PL-4705

**Opinion by Judge Vaidik**
Judges Altice and Foley concur.

**Vaidik, Judge.**

# Case Summary

Susan S. McDermott filed a complaint for defamation per se against the City of Carmel ("the City") and its mayor, Sue Finkam ("Mayor Finkam"), for comments Mayor Finkam made at two Carmel City Council meetings about financial documents the City had requested from McDermott when she was the board chair of Carmel Christkindlmarkt, Inc. ("CCI"). The trial court dismissed the complaint under Indiana Trial Rule 12(B)(6), and McDermott now appeals. Because Mayor Finkam's comments do not, on their face, attribute wrongdoing to McDermott and are as consistent with mistake or incompetence as with misconduct, we conclude as a matter of law that they do not constitute defamation per se. We therefore affirm the trial court.

# Facts and Procedural History

The factual allegations in the complaint, which we accept as true for purposes of a Trial Rule 12(B)(6) motion to dismiss, can be summarized as follows. McDermott is a longtime Carmel resident with a decades-long career as a financial professional for multiple nonprofit organizations. Mayor Finkam has served as the City's mayor since January 2024. Shortly after taking office, Mayor Finkam appointed McDermott to the three-member board of directors of CCI, a 501(c)(3) charitable organization and 509(a)(3) supporting organization of the City. McDermott accepted the appointment in February 2024, and her fellow board members later elected her chair of the CCI board.

[3] Following her appointment, McDermott and the rest of the CCI board undertook efforts to improve the organization's governance, including revising CCI's bylaws, reviewing its compensation practices, and retaining new legal counsel. At the same time, the City—through Mayor Finkam and the corporation counsel, Samantha Karn—began working with CCI toward a new operating agreement between the two entities.

[4] On July 3, 2024, Karn emailed McDermott requesting a current profit-and-loss statement and an employee salary study for CCI. McDermott, who was on vacation, responded the same day and said she would provide the records upon her return; she supplied both documents on July 8. On July 11, Karn separately asked CCI's legal counsel for the same materials and was told they had already been furnished by McDermott three days earlier. The complaint alleges that no City representative thereafter requested any additional CCI financial information from McDermott or followed up on what she had provided.

[5] Negotiations over the proposed operating agreement continued through the late summer and into the fall of 2024. On September 11, McDermott received a voicemail from Mayor Finkam stating that she wanted the operating agreement finalized by September 30 and that she would not authorize the City's street department to install the Christkindlmarkt "until a new operating agreement was finalized." Appellant's App. Vol. 2 p. 28. On September 17, CCI received a proposed operating agreement from Karn, which, among other things, contained a provision that the City "owned" "the Christkindlmarkt Festival and the intellectual property of" CCI. *Id.* The next week, on September 24,

McDermott, CCI's chief executive officer, Mayor Finkam, and Karn met and agreed to terms for financial reimbursement for that year's festival. But the next day, Karn advised CCI that the City was unwilling to proceed with the operating agreement unless CCI agreed to all of the City's terms, including that the City "owns" the festival. *Id.* at 29. On September 30, CCI sent a "compromise operating agreement" to the City agreeing to the ownership term demanded by the City while seeking to protect CCI's nonprofit status. *Id.*

[6] On October 3, 2024, McDermott and other CCI representatives met at city hall with Karn and Mayor Finkam's chief of staff, Rebecca Carl; Mayor Finkam did not attend. The complaint alleges that the meeting's stated purpose—finalizing the operating agreement—was a ruse, and that its true purpose was to replace two of CCI's three board members with appointees who would execute an operating agreement on the City's terms. *See id.* at 30. At the meeting, Karn and Carl told the CCI representatives that Mayor Finkam was removing those two board members, effective immediately, though McDermott was invited to remain. Later that day, McDermott learned that the newly appointed board members had called a special board meeting to execute an operating agreement on the City's terms. Upon learning this, McDermott submitted her resignation from the CCI board.

[7] On October 7, 2024, four days after McDermott resigned, Mayor Finkam addressed the Carmel City Council about her administration's work with CCI. According to McDermott, Mayor Finkam made the following statement (which we quote exactly as it appears in the complaint): "we have repeatedly requested

comprehensive financials from the market leader, the attorney and the Board chair [McDermott] for five (5) months…. [we] received some but not all [of the financial information] …This is problematic." *Id.* at 31-32. At a subsequent Carmel City Council meeting on October 21, McDermott alleges that Mayor Finkam made the following statement (which, again, we quote exactly as it appears in the complaint): "The Board chair [McDermott] did give our attorney the financial information the one time she was asked–it wasn't everything needed and she is still waiting for information." *Id.* at 32.[1] Mayor Finkam subsequently posted videos of both statements to her personal social media account, the City's social media account, and the City's newsletter, and the statements were also reported by several news outlets.

[8] In April 2025, McDermott filed suit against the City and Mayor Finkam, in both her official and personal capacities, asserting a single count of defamation per se. The defendants moved to dismiss under Indiana Trial Rule 12(B)(6). During oral argument on the motion, McDermott withdrew her claim against Mayor Finkam in her official capacity, leaving only the claims against Mayor Finkam personally and against the City. In November 2025, the trial court granted the motion and dismissed McDermott's complaint.

[9] McDermott now appeals.

---

[1] As McDermott recognizes, Mayor Finkam's statements referred only to "the Board chair." *See* Appellant's App. Vol. 2 p. 41 nn. 2-3. McDermott's complaint added "[McDermott]" after "the Board chair"— "apparently to clarify that 'the Board chair' referred to her." *Id.* at 10 n.1.

## Discussion and Decision

[10] McDermott appeals the trial court's dismissal of her complaint. Under Indiana Trial Rule 12(B)(6), a civil action may be dismissed for "failure to state a claim upon which relief can be granted." A 12(B)(6) motion "tests the legal sufficiency of the plaintiff's claim, not the facts supporting it." *Residences at Ivy Quad Unit Owners Ass'n v. Ivy Quad Dev., LLC*, 179 N.E.3d 977, 981 (Ind. 2022) (quotation omitted). To overcome a 12(B)(6) motion, the complaint must allege facts that show the "possibility of relief." *Id.* at 980. We review a 12(B)(6) motion de novo, taking the facts alleged in the complaint as true, considering all allegations in the light most favorable to the nonmoving party, and drawing every reasonable inference in that party's favor. *Id.* at 981.

[11] Although the defendants sought dismissal of McDermott's complaint on five grounds, the trial court dismissed the complaint based on "one clearly dispositive argument." Appellant's App. Vol. 2 p. 13. That is, the court concluded, "as a matter of law," that Mayor Finkam's statements about McDermott's disclosure of financial records "do not constitute defamation *per se*." *Id.* at 14. We do the same.[2]

[12] To state a claim for defamation per se, a plaintiff must allege a communication that, "without reference to extrinsic evidence," imputes (1) criminal conduct, (2) a loathsome disease, (3) misconduct in the plaintiff's trade, profession,

---

[2] Although our review is de novo, we commend the trial court on its thorough, well-reasoned order.

office, or occupation, or (4) sexual misconduct. *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006); *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007). Because a plaintiff pursuing a per se theory receives the benefit of presumed damages, the imputation must be obvious on the face of the statement—it must constitute "a serious charge of incapacity or misconduct in words so obviously and naturally harmful that proof of their injurious character can be dispensed with." *In re Ind. Newspapers Inc.*, 963 N.E.2d 534, 549-50 (Ind. Ct. App. 2012) (quotation omitted). "The offensiveness of the statements cannot be determined by how the plaintiff views the statement; the defamatory nature must be present in the nature of the words without any additional facts or circumstances to give context." *Id.* at 550. A plaintiff has "a high bar to meet" to show that a communication unambiguously accuses her of professional misconduct. *Ducker v. Amin*, No. 1:12-CV-01596, 2014 WL 1018050, at *8 (S.D. Ind. Mar. 14, 2014) (citing *Levee v. Beeching,* 729 N.E.2d 215, 220 (Ind. Ct. App. 2000)).

[13] Because the sufficiency of a defamation per se claim depends on the words themselves rather than on facts outside the complaint, Indiana courts routinely resolve the question at the pleading or summary-judgment stages. *See, e.g.*, *Trail*, 845 N.E.2d at 137-38 (Supreme Court affirming a Trial Rule 12(B)(6) defamation dismissal); *Columbus Specialty Surgery Ctr. v. Se. Ind. Health Org., Inc.*, 22 N.E.3d 665 (Ind. Ct. App. 2014) (Court of Appeals affirming a Trial Rule 12(B)(6) defamation dismissal); *Baker v. Tremco Inc.*, 917 N.E.2d 650 (Ind. 2009) (Supreme Court affirming grant of summary judgment to defendant on

defamation per se claim); *Hrezo v. City of Lawrenceburg*, 81 N.E.3d 1146 (Ind. Ct. App. 2017) (Court of Appeals affirming grant of summary judgment to defendant on defamation per se claim). We now turn to the statements at issue.

[14] McDermott's complaint quotes two statements Mayor Finkam made at Carmel City Council meetings in October 2024. The first, made on October 7, reads: "we have repeatedly requested comprehensive financials from the market leader, the attorney and the Board chair [McDermott] for five (5) months…. [we] received some but not all [of the financial information] …This is problematic." The second, made on October 21, reads: "The Board chair [McDermott] did give our attorney the financial information the one time she was asked–it wasn't everything needed and she is still waiting for information."

[15] Taking the statements on their face—without the interpretive gloss McDermott's complaint and briefing supply—we conclude they do not obviously and unambiguously impute misconduct to anyone. The first statement reports that three people associated with CCI—"the market leader, the attorney and the Board chair [McDermott]"—were asked for records over a period of months and that the City "received some but not all" of what it sought, which Mayor Finkam described as "problematic." This is, at most, a report that a request to multiple people went partially unfulfilled. It does not say why the records were incomplete, does not attribute fault to any particular person, and does not suggest that the omission was wrongful or improper as opposed to merely mistaken or incompetent. The second statement, if anything, cuts in McDermott's favor: it credits McDermott with providing information

"the one time she was asked" and identifies no wrongdoer for the information that remained outstanding. Indeed, McDermott had already resigned from the CCI board by the time either statement was made—four days before the first statement and more than two weeks before the second—and so she could no longer supply whatever CCI information remained outstanding.

[16] We find that this case is like *Baker* and *Hrezo*. In *Baker*, our Supreme Court held that a supervisor's statement that a salesperson had engaged in "inappropriate" sales practices was not defamation per se because the word "inappropriate" was too vague to establish, on its face, that the conduct amounted to misconduct rather than something more benign. 917 N.E.2d at 658 ("Indeed, it may be inferred from use of the word 'inappropriate' that the sales practice did not amount to any misconduct."). Mayor Finkam's statements suffer from the same problem: describing a request for records as having been partially fulfilled, and characterizing that shortfall as "problematic," conveys no more concrete an accusation than the word "inappropriate" did in *Baker*. So too in *Hrezo*, where we held that statements reporting performance deficiencies (such as that the plaintiffs used more workers than necessary, overcharged, and did unnecessary work) were not defamatory per se because the deficiencies described "could just as easily have been caused by mistake or incompetence" as by misconduct, such that a reader would need extrinsic facts to conclude otherwise. 81 N.E.3d at 1156. The same is true of Mayor Finkam's report that the City received CCI's financial records only in part: an incomplete response is just as consistent with mistake or incompetence as opposed to anything wrongful or improper by

McDermott. As the trial court aptly explained in its dismissal order, "Although a seasoned, respected financial professional might understandably bristle at Finkam's comments, '[t]he offensiveness of the statements cannot be determined by *how the plaintiff views the statement* . . . .'" Appellant's App. Vol. 2 p. 19 (quoting *Ind. Newspapers*, 963 N.E.2d at 550). Because Mayor Finkam's statements, on their face, are not "so obviously and naturally harmful" as defamation per se requires, we conclude as a matter of law that they do not constitute defamation per se.

[17] McDermott resists this conclusion by arguing that her "fiduciary duties" as CCI's board chair transform Mayor Finkam's otherwise vague characterization into a "serious" charge of misconduct. Appellant's Br. p. 20. She relies mainly on *Stanley v. Kelley*, 422 N.E.2d 663 (Ind. Ct. App. 1981), *overruled in part by Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 284 (Ind. 1991), and *Glasscock v. Corliss*, 823 N.E.2d 748 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*.[3] Neither case supports her position. *Stanley* does not discuss fiduciary duties at all and, in any event, arose in an ordinary employment setting—not, as here, a nonprofit board member's duty to a municipality with which the nonprofit was independently negotiating. 422 N.E.2d at 669. *Glasscock* is likewise inapposite: the statements there specifically accused an employee of

---

[3] McDermott also cites two out-of-state decisions, *Stonebridge Health Systems, LLC v. Miller*, 416 So. 3d 611 (La. Ct. App. 2025), and *Tarter v. Bendt*, No. 1 CA-CV 19-0703, 2021 WL 282265 (Ariz. Ct. App. Jan. 28, 2021). Neither applies Indiana law, and neither binds this Court. *Tarter*, moreover, is not even precedential in Arizona, the jurisdiction that decided it.

using company money to purchase gifts for her family and friends for several years and of discrepancies in her expense reports—concrete, particularized misconduct far removed from a generalized report that a request for records went only partially fulfilled. 823 N.E.2d at 753-54. Whatever fiduciary obligations McDermott owed as a CCI board member, invoking them does not supply the specificity that Mayor Finkam's statements, on their face, lack.

[18] The trial court did not err in dismissing McDermott's complaint under Trial Rule 12(B)(6).

[19] Affirmed.

Altice, J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

F. Anthony Paganelli
Christopher Goff
Paganelli Law Group
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Andrew Z. Soshnick
Stephanie L. Gutwein
Natalie W. Ditzler
Faegre Drinker Biddle & Reath LLP
Indianapolis, Indiana